By the. Court.
Plaintiff in error was indicted by the grand jury of Perry county for shooting with intent to kill and shooting with intent to wound one Joseph Toth. He was convicted at the April term, 1913, of the common pleas of Perry, on the second count' of the indictment—that of shooting with intent to wound. On the trial the defendant relied on the defense of self-defense. The judgment of the common pleas was affirmed by the court of appeals..
The plaintiff in error urges that the court erred in its charge to the jury and no other error is suggested. The court charged as follows with reference to self-defense:
“A person who is assaulted and believes and has' good cause to believe that great bodily harm is. about to be done him and who acts in a moment of seeming impending peril need nor gauge nicely the quantum or amount of force necessary to repel his assailant. The question in such case is whether under all the circumstances he had reason to believe and did believe that the means or force exercised was necessary to protect him from impending danger or great bodily harm,.
*277 “The degree of force and the nature or means which may be properly employed in self-defense must depend upon the circumstances of the case in hand. The danger must be either actual or apparent. If the appearances were such as voould have alarmed a man of ordinary firmness and would have impressed him that such danger was imminent and the party assailed honestly believed such to be the case it is not material whether the danger was real or not. Of this the jury must judge from the circumstances. Now, to apply the law to this case. If you should find that the defendant, Charles Napier, being in the lawful pursuit of his business and without fault on his part was attacked by Joseph Toth, and the defendant as would any man of ordinary firmness then honestly believed that he was in immediate danger of physical violence or injury to himself in such case the jury will determine whether the defendant then and there used such force and such only as was or appeared to him to be reasonably necessary to prevent such threatened injury. If so he would be guilty of no crime and your verdict would be not guilty. But if on the other hand you should find from the evidence that the defendant was not in any immediate danger either real or to him apparent of receiving any bodily injury or should find that he used such unnecessary, excessive or improper amount or kind of force as was plainly altogether disproportionate in violence to that of the attack and wholly unnecessary for his protection then in any of those cases you will find that the defendant had not acted in self-defense.”
*278 It is insisted that the charge given is contrary to the law of self-defense in this state as declared in Marts v. The State, 26 Ohio St., 162, where the rule is stated as follows: “Homicide is justifiable on the ground of self-defense, where the slayer, in the careful and proper use of his faculties, bona fide believes, and has reasonable ground to believe, that he is in imminent danger of death or great bodily harm, and that his only means of escape from such danger will be by taking the life of his assailant, although in fact he is mistaken as to the existence or imminence of the danger.”
This rule has long been enforced in the courts of the state and has become firmly fixed as part of our criminal jurisprudence. A departure from it in the charge of a trial court to a jury, in a manner so substantial as to prejudice the rights of the defendant, would be error. In this' case, however, there was not such a departure as in the light of'the circumstances could have possibly worked prejudice to the defendant below. This situation is disclosed by the testimony of the defendant himself in describing the transaction and his own state of mind concerning it, viz.:
“Q. You knew that your brother, Tom, was behind you? A. Yes sir.
“Q. And you knew that Alec Toth was behind you? A. Yes sir.
“Q. Alec didn’t do a thing? A. No sir.
“Q. You did not have any fear of Alec Toth? A. No sir; my brother was there.
“Q. Consequently you had these two fellows in front of you ? A. Yes sir'.
*279 “Q. And you were not scared of what was going to happen in front of you? A. No sir. Never was scared of a man in my life, when I was anyways near his size.
“Q. You didn’t have any fear of bodily harm ? A. I saw he was coming my way. I wasn’t afraid of getting killed, if I could take care of myself. I proposed to take care of myself the best I could and if I couldn’t would ha\ e to stand for it, that was all.”
And again:
“Q. How did you come to carry a gun? A. That man wanted to fight over there in the mine.
Q. You went down there prepared? A. Not to get hurt if I could possibly help it.
“Q. You armed yourself with the gun before you went down there with the expectation of using it? A. If it was necesssary, yes sir.”
We think it clear from the undisputed testimony in the case that the language used by the court, “If the appearances were such as would have alarmed a man of ordinary firmness” and “the defendant as would any man of ordinary firmness then honestly believed that he was in immediate danger of physical violence or injury to himself,” could not have prejudiced the rights of the defendant and did not require the jury to apply an improper test.
For these reasons the judgment of the court below will be affirmed.

Judgment affirmed.

Nichols, C. ]., Johnson, Wanamaker, Newman and Wilkin, JJ., concur.